Willoughby, J.,
delivered the opinion of the court:
The first point in this case arises upon a construction of the “ act to revise and amend the criminal procedure.” Section first of chap. 208, page 931, of Sess. Acts of ’66 and ’67. This provides that trials for felony shall he in a County or Corporation court, &c., except that a person indicted for an offence punishable with death, “may, upon his arraignment,” demand to be tried in the Circuit court, &c., and he shall, thereupon, be “remanded for trial in the Circuit court,” &c., and copies of the proceedings in the County court shall be certified to the clerk of the Circuit court.
The second section of that chapter further declares that, under certain circumstances, a person shall be “ arraigned and tried.” It is contended that, because the accused did not enter his plea, and refused so to do, and because the court ¿id not thereupon, enter for him the plea of not guilty, according to the third section of this act, the arraignment was not complete in the County court, and the Circuit court having jurisdiction only to try, and to try only after the completion of the arraignment, it had not, under such circumstances, jurisdiction of this case. Our attention is called to the fact that the Circuit court has no inherent jurisdiction, and no such jurisdiction as was formerly had by the General court, and still later by the County court; and that it has no jurisdiction except such as is expressly conferred; that the jurisdiction to try felonies having been *643 'taken away from the Circuit court, except in certain ■cases enumerated by the act under consideration, it follows that its authority is based upon the circumstances ■attending such excepted cases and upon these alone. I 'think that these are propositions that may be admitted, and that they are in fact established by a consideration of the history of our courts.
The prisoner is allowed, “upon his arraignment” in the County court to elect in what court he shall he tried. The precise point is at what time is this election to he made; whether before or after pleading. Do the •words upon his arraignment mean, at the, time of or after his arraignment; and does an arraignment necessarily 'Include the plea? This leads us to enquire what is an arraignment?
Blaekstone says, book 4, page 322: “To arraign is nothing else but to call the prisoner to the bar of the court to answer the matter charged upon him in the indictment.” On page 324, he says: “When a criminal is arraigned, he either stands mute or confesses the 'fact, which circumstances we may call incidents to the arraignment, or else he pleads to the indictment, which is to be considered as the next stage of the proceedings.”
A whole chapter is devoted by this author to the subject of arraignment and its incidents. The next chapter is upon the subject of plea and issue. It is evident, therefore, I think, that he regards an arraignment and the plea of the accused as separate stages of the proceeding. The arraignment is the act of the court; the plea is the act of the accused. It is true, that by the 'third section of the act, the court may, upon the refusal of the accused to plead, enter for him the plea of not guilty; hut this is done in his behalf. It is an act performed for the accused.
It is true that in the forms of proceedings, what is called an arraignment, generally includes the pleading <of the accused; but I think that the more strict mean *644 ing of the word is confined to the action of the court. It is expressed in Latin, as Lord Hale says, “ acl rationem ponere” And this I think, too, accords more with the general idea of the word arraign, which is regarded as meaning to accuse, to charge, &c. If this be correct, it follows that there is no error in the plea not being' put in in the County court. The prisoner is to make the election at the time of his arraignment; or if it should be said after his arraignment it would not necessarily mean after his plea.
Such a construction is plainly the most liberal one-for the accused. The election given to him is a privilege. The sooner he is allowed to avail himself of this privilege, the more extended it is. Any other construction would tend to abridge and restrict this privilege. Hpon being called upon to plead, there are several courses which he may take. He may move to quash the indictment. He may plead to the jurisdiction in abatement, or a special plea in bar, such as former conviction or acquittal. He may demur, or he may plead not guilty. All these present questions for some court to decide. Bight here may be the turning point of his .case. Here may arise the most important questions to> be determined. The law gives him the privilege of' electing in what court he will be tried upon his arraignment. He may wish to have these important questions determined by the Circuit court; and would it not be-depriving him of a liberal construction of this law to say that he shall continue in the County court until the' issue is fully made up ?
■ It would seem to me that the prisoner could object with better grace that he is not allowed to plead; thatis,, to select in what court he might plead. But he is now complaining that he did not plead, when he refused to-plead. He complains that the court did not do for him Jvhat he refused to do for himself, and what it is apparent he did not wish the court to do for him. This looks *645 almost like one seeking to take advantage of his own wrong, if it be a wrong.
By construing the word upon, as meaning at the time ■of, we give it a signification, which, is a very common one, and thus give to the accused the benefit of a liberal construction of the law in cases generally, whatever may be the effect of such construction in this particular ■case.
It is claimed that the language of the act restricts the Circuit court to the mere trial of the cause. I think, however, that this construction, if it precludes the accused from the benefit of having the usual incidents of a trial in the Circuit court, is too strict. Such a construction would imply that nothing could be done but by an issue. But suppose the accusedjpleads in abatement, and then elects to go to the Circuit court, and there his plea is not sustained; or suppose'he demurs, and his demurrer is overruled in the Circuit court, what would have to be done? Evidently he would be required to plead again, and this, too, in the Circuit court. He would have to be arraigned again. To restrict the Circuit court to a mere trial of an issue, in the sense contended for, would render it almost impossible to proceed in many criminal cases.
If these views be correct, I think no substantial error was committed by arraigning the accused jointly with his co-defendant. This did not compel them to plead the same plea. Hor did it compel them to be tried jointly. It would no doubt have been proper to arraign them separately. But in either event, I cannot see how any rights were put in jeopardy or any harm done. It is not such a substantial error as would compel a reversion of the judgment.
Another ground of error as assigned is that it does not sufficiently appear from the record as is claimed, that an indictment for murder was presented by the grand jury.
*646 The language upon the order book is as follows
“ A* a T-iari;erly court held for Chesterfield county,. the courthouse thereof on the 9th day of March,. ^ qggc^ an(q jn the 93rd year of the Commonwealth.
Edward A. Johnson, gentleman, foreman, W. G.. Clarke, Joseph D. Ellett, Joseph H. Wilkinson, Sami. Chetham, Joseph H. Rowlett, Ajax Gary, Andrew Howison, John W. Lipscomb, Geo. S. Adkinson, Geo. C. Gregory, Joseph Yest, Augustus Talbot, Jno. W. Beasley, Sami. Taylor, Richard Gill, Thos. O. Wilson and Wm. Walker were sworn a grand jury of inquest for the body of this county, and having received their-charge withdrew, and after some time returned into court and presented the following indictments as “ true bills,-” to wit, one against Mareellus EPunnally, one against Lewis Mason, one against Ben Gray, one against Lawson Burfoot, one .against Rachael Carr, one against Daniel Johnson, one against Thos. Brown, Jr., one against Lewis Johnson, one against Thomas Willis and Richard Whitehead, and one against R. Harris and Giles Coggins not true bills, and the jury was adjourned over until to-morrow at 11 o’clock.
It is claimed that it cannot be determined from this to which class the indictment against Richard Whitehead belongs, whether to that of “ true bills” or “ not true bills.” It is apparent from a fair reading of this, that Thomas Willis and Richard Whitehead are included in the same indictment.
The words “ one against” are prefixed to each name-before these, and between these is only the word “ and.” After Whitehead is a comma, and again we have “ one against” R. Harris and Giles Coggins. A perfectly unbiassed reading of this would, I think, show that the words “not true bills” appertain only to the last two persons named, though it must be confessed that it is quite obscure and perhaps somewhat ambiguous.
*647 In Cawood’s case, 2 Va. Cas. 527, 542, the court say: “We admit that after a grand jury have found a hill and reported it, and their finding is placed on the record, that the indictment so found and endorsed becomes as much a part of the record as if it were spread in extenso upon the order book; but in order to give it that character we deem it essential that a record should be made of the finding upon the order book.”
This would seem to imply that if the grand jury present an indictment, and the fact appears from the record that they acted upon it, we may look to the indictment to see what it was and what was the action of the grand jury upon it. The indictment then, though not spread upon the record, is a part of the record: And this, I believe, has been almost the universal usage of the courts of Virginia. It is certainly evident from the record on the order book, that the indictment against Bichard "Whitehead was presented either as a true bill or as not a true bill. But if such indictment is a part of the record, we may look to the indictment itself, I think, to explain this apparent ambiguity and obscurity. In other words, we may look to the whole record in construing an uncertainty in any part of it. Goodwyn v. State, 4 Smede & Marsh. Miss. R. 520.
If we are permitted then to look to the indictment, as I think We are, there is no difficulty in coming to a conclusion as to whether the indictment against Biehard Whitehead comes under the class of “ true bills” or “ not true bills;” and the endorsement signed by the foreman shows that it belongs to the former.
But it is claimed that the clerk should have further identified this indictment by describing it as an indictment “ for murder.”
If we are authorized to look to the indictment as part of the record, this cannot be a substantial reason for holding that the failure to do so, is error for which *648 judgment should be reversed. Suppose these words had, been inserted, they would not then have necessarily shown that this indictment is the identical one referred to by such words. The record shows that an indictment was found. This speaks for itself and shows for itself what it is. There would be no more difficulty in substituting one indictment for murder for another for murder, or a defective one for a good one, than there would be in substituting an indictment for manslaughter for the one for murder. It would not be contended, I presume, that either party would be bound by such words; certainly not the accused. If on inspection of the indictment, it should turn out to be totally defective as an indictment for murder, certainly these words would have no bearing whatever to show it to be a sufficient indictment.
The accused would claim, and rightfully, to be governed by the indictment itself, and I think the Commonwealth must have the same privilege. This view is fully substantiated by the case of Goodwyn v. The State, above referred to, in which case there was no description whatever of the offence in the minutes of the court.
In Cawood’s ease there was no reference whatever to any indictment against the accused. There was, therefore, no evidence whatever, that such indictment had been presented in open court, or that it was ordered to be made a part of the record. An indictment to be complete must be presented in open court. In Cawood’s case there was no evidence whatever, that this essential fact existed, or that any action whatever was taken upon it. On the contrary, the record in that case expressly negatived such fact. Ho action by the court was taken upon it. But in this case, there is evidence that some action was taken, and the only difficulty is to determine what such action was; which, however, is solved by an inspection of the whole record. Even in Ca *649 ioood’s case the decision was hy a divided court; judges Barbour and Daniel dissenting; though we do not dispute its authority on that ground.
Another error assigned is the denial of the Circuit court to quash the venire facias on motion, made on the ground that it was not in conformity to the law. This venire facias is in these words, to wit: “The Commonwealth of Virginia to the sheriff of Chesterfield county, greeting: We command you that you cause to come before the Circuit court of Chesterfield county at the courthouse thereof, on the 24th day of June 1869 (special term), twenty-four good and lawful men, freeholders of your county, each one of whom, is twenty-one years of age, to recognize on their oaths, whether Richard H. Whitehead be guilty of the felony of which he stands indicted or not. And have then there the names of the said freeholders and this writ. Witness,” &c.
The statute already referred to, section 4, chapter 208, page 932, Acts of 1866-7, requires that this writ “shall command the officer charged with its execution to summon twenty-four persons freeholders of his county or corporation residing remote from, the place where the offence is charged to have been committed,” &c.
The language of the acts relating to this subject previous to 1846, 1 R. C., p. 601, sec. 9, is, “ Freeholders of his county or corporation of the neighborhood of the place where the fact shall have been committed.” The language of the act of February 24, 1846, Sessions Acts, p. 62, and again of 1847-8, page 148, sec. 5, is, who reside remote from the placewhere the offence is charged to have been committed.”
The Revisors of the Criminal Code in 1849 recommend these words in the act of 1846 and 1847-8 to be stricken out, and report the section with such words stricken out, remarking, that thus all foundationis taken away, for the objection that the section is in conflict with the Bill of Rights. (Report of Revisors, page *650 1018.) The Bill of Bights declares that the accused is entitled to a speedy trial by an impartial jury of twelve men of his vicinage. But the legislature disregarded this recommendation of the revisors, and directed the wor^s ^e again inserted: and so they have continued to 1867, and were then again upon a revision of the criminal procedure re-enacted.
This history shows that the legislature did not act unadvisedly upon this subject; that their attention was called to the apparent conflict with the Bill of Bights; but notwithstanding this, and in opposition to the recommendation of the revisors, they deliberately and advisedly inserted these words. In 4 Bl. Com. 350, it is said the'sheriff of the county must return a panel of “jurors liber os et legales homines de vicineto; that is, freeholders without just exception, and of the visne or neighborhood, which is interpreted to be of the county where the fact is committed.” It is in accordance with this that the accused is entitled by the Bill of Bights to “an impartial jury of his vicinage;” that is, to the jury of his county. The language of the act, requiring persons remote from the place where the offence is charged to have been committed, then, is not really in conflict with the Bill of Bights; but means in a remote part of the county. Such a construction is not an unreasonable one, and relieves us from charging the legislature with having deliberately violated the Bill of Bights— an interpretation which ought to be given to any act of the legislature,- if consistent and reasonable.
This history of the legislation upon the subject shows us also that this requirement was deemed an essential one. They command not that this shall be one of the qualifications of a juror, not that the sheriff shall summon such men, but that “ the writ itself shall command the officer to summon such men. This, it seems to me, constitutes an important difference between our statute and those upon which decisions have been made in *651 some of the States, holding that the words, “ good and lawful men” in the writ of venire facias, imports men who have the requisite qualifications. Did not the statute expressly command, that the writ itself shall contain these words, “residing remote,” &c., and were this a qualification of a juror otherwise defined, I should be inclined to hold that the words, “ good and lawful men” in the venire, were sufficient.
As has been well said, it is often the most difficult thing that arises in the construction of statutes, to determine -whether provisions of time and form are directory or mandatory. Sedgwick says, in his work on Statutory and Constitutional Law, page 368, that it depends upon whether a strict compliance with them appears essential to the judicial mind. If so, they- are mandatory.
It does appear to me, on looking at the history of the legislation upon this subject, that this requirement to have these words in the writ itself, was deemed essential in the legislative mind; and if so, it must be so in the judicial mind. The object of this must have been to obtain men upon the jury who are supposed not to be so immediately familiar with the fact charged in the indictment, and consequently more unbiassed and better qualified to give an impartial decision. With this view, it must have been intended to confer upon the accused a right or privilege: and therefore, if there is reasonable doubt upon the construction, the accused is entitled to the benefit of such doubt.
In the Commonwealth v. Wash, 16 Gratt. 530, it was held that a writ of venire facias, which directed the officer to summon freeholders, who owned “ property to the value of one hundred dollars at least,” ought to have been quashed on motion, as it contained a qualification which theTaw did not require. It was there held, that it was not material to the question whether this mandate of the writ was regarded by the officer or *652 not. Uor was the accused required to show that he had been injured by the error of the officer issuing the writ. It is true, that in that case the error was, that it contained more than the law allows, and in this case it conlains less. Bui the principle of the case seems to be, that the writ itself must be one according to the law; that is, that the requirements of the writ are essential, and cannot be dispensed with, though the officer might in fact have summoned only tjie proper persons.
It follows, therefore, that the court erred in denying the motion to quash the writ of venire facias ; that the judgment must be reversed, and a new trial awarded to the accused.
Judgment reversed.